O

# United States District Court
# Central District of California

| | |
|---|---|
| MAXWELL GLASSBURG, individually and on behalf of all others similarly situated,<br><br>              Plaintiff,<br><br>    v.<br><br>FORD MOTOR COMPANY,<br><br>              Defendant. | Case № 2:21-cv-01333-ODW (MAAx)<br><br>**ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION [35] AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS [33]** |

## I.    INTRODUCTION & BACKGROUND

Defendant Ford Motor Company is the manufacturer of the Ford Mustang. In May 2018, Plaintiff Maxwell Glassburg purchased a certified pre-owned 2015 Mustang from a non-party authorized dealer. Glassburg alleges his vehicle has a defective trunk lid wiring harness that Ford failed to repair and that causes problems with the backup camera, the trunk release, the trunk light, and satellite radio reception. Glassburg asserts claims against Ford for (1) breach of express warranty; (2) breach of implied warranty of merchantability; (3) violation of the California Consumer Legal Remedies Act; (4) violation of California's unfair competition law; and (5) fraudulent omission. (First Am. Compl. ("FAC"), ECF No. 31.)

Ford concurrently moves to compel arbitration, (Mot. Compel Arbitration

("Mot. Arb."), ECF No. 35), and to dismiss Plaintiff's FAC, (Mot. Dismiss, ECF No. 33). The Court resolves the arbitration motion first, because if the parties have agreed to arbitrate this matter, then the arbitrator should hear any motions to dismiss. Nevertheless, for the reasons set forth below, the Court **DENIES** Ford's Motion to Compel Arbitration and proceeds to **GRANT IN PART** and **DENY IN PART** Ford's Motion to Dismiss.[1]

## II. LEGAL STANDARDS

*Motion to Compel Arbitration.* The Federal Arbitration Act ("FAA") provides that contractual arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "[A] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that . . . arbitration proceed in the manner provided for in [the arbitration] agreement." 9 U.S.C. § 4. Upon a showing that a party has failed to comply with a valid arbitration agreement, the district court must issue an order compelling arbitration. *Id.*

The Supreme Court has repeatedly interpreted § 2 as reflecting "a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983). In determining whether to issue an order compelling arbitration, a court may not review the merits of the dispute, and generally must limit its inquiry to (1) whether the contract containing the arbitration agreement evidences a transaction involving interstate commerce, (2) whether there exists a valid arbitration agreement, and (3) whether the dispute falls within the scope of the arbitration agreement. *See Republic of Nicar. v. Std. Fruit Co.*, 937 F.2d 469, 477–78 (9th Cir. 1991). If each question is answered in the affirmative, a court must order the parties to arbitrate in accordance with the terms of their agreement. 9 U.S.C. § 4.

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

*Motion to Dismiss.* A court may dismiss a complaint under Federal Rule of Civil Procedure ("FRCP") 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). To survive a dismissal motion, a complaint need only satisfy the "minimal notice pleading requirements" of FRCP 8(a)(2). *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). FRCP 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that a claim must be "plausible on its face" to avoid dismissal).

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft*, 556 U.S. at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). However, a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Ultimately, there must be sufficient factual allegations "to give fair notice and to enable the opposing party to defend itself effectively," and the "allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

### III.   DISCUSSION

This case is not appropriate for arbitration because Ford is not a signatory to the operative arbitration agreement, and no valid nonsignatory theory gives it the right to compel. The Court therefore denies Ford's motion to compel arbitration and proceeds

to dismiss the implied warranty of merchantability and fraud claims from the FAC without leave to amend.

### A. Motion to Compel Arbitration

The basis for Ford's Motion to Compel Arbitration is the Retail Installment Sales Contract ("Contract") Glassburg signed when he purchased his Mustang from non-party DCH Ford of Thousand Oaks ("Dealer"). The Contract's arbitration clause contains the following key provision:

> Any claim or dispute, whether in contract, tort, statute, or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action.

(Mot. Arb. Ex. 1 ("Contract"), ECF No. 35-2.)

The parties do not dispute that the Contract, including its arbitration language, is valid and operable as between Glassburg and the Dealer. Glassburg purchased his Mustang from the Dealer, and the Dealer is the party whose name appears on the Contract. Ford, on the other hand, is not a signatory to the Contract. As the moving party, Ford must therefore show that it is entitled to compel arbitration through an applicable nonsignatory theory. *See, e.g., Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126 (9th Cir. 2013); *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1287 (9th Cir. 2009) ("The strong public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement.").

State contract law determines whether Ford may compel arbitration as a nonsignatory. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631–32 (2009) (recognizing that nonsignatory theories are "background principles of state contract law regarding the scope of agreements (including the question of who is bound by

them)" and are therefore not altered by the FAA); *Kramer*, 705 F.3d at 1128 (9th Cir. 2013) ("[A] litigant who is not party to an arbitration agreement may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement.").

"Nonsignatory defendants may enforce arbitration agreements where there is sufficient identity of parties." *Jenks v. DLA Piper Rudnick Gray Cary U.S. LLP*, 243 Cal. App. 4th 1, 8 (2015) (internal quotation marks omitted). Ways to make this showing include "(a) incorporation by reference; (b) assumption; (c) agency; (d) veil-piercing or alter ego; (e) estoppel; and (f) third-party beneficiary." *Benaroya v. Willis*, 23 Cal. App. 5th 462, 469 (2018). Here, Ford argues that it can compel arbitration under both estoppel and agency theories. Ford is incorrect on both counts.

1. *Estoppel*

Arbitration is required under the estoppel principle if the non-party has asserted claims that are "dependent upon, or inextricably intertwined with, the obligations" imposed by the agreement containing the arbitration clause. *JSM Tuscany, LLC v. Superior Court*, 193 Cal. App. 4th 1222, 1239 (2011); *Goldman v. KPMH, LLP*, 173 Cal. App. 4th 209, 219 (2009). The test is whether the non-party "relies on the agreement" containing the arbitration provision "to establish its cause of action." *Goldman*, 173 Cal. App. 4th at 229–30.

Under binding authority of *Kramer*, in the typical case, a consumer's statutory and contractual claims against a vehicle manufacturer based on the condition of the vehicle are not dependent on a purchase contract the consumer may have signed when the consumer purchased the vehicle from a dealer. 705 F.3d at 1132. Applying this holding here, Glassburg's claims against Ford do not rely on the existence of the Contract because, as the *Kramer* court pointed out, Glassburg would still have a claim against the manufacturer even if he had purchased the vehicle from the non-party dealer for cash and in the absence of a written purchase agreement. *Id.* Glassburg's claims against Ford "ar[i]se independently" of the terms of the Contract, and

accordingly, estoppel does not apply. *Id.*

Ford argues that *Felisilda v. FCA US LLC*, 53 Cal. App. 5th 486 (2020) compels a different result, but Ford is mistaken. In *Felisilda*, the consumer had originally brought their claim against both the dealer and the manufacturer. *Id.* at 491. This difference is key. The existence of a claim against the dealer makes *Felisilda* inapposite because the claim against the dealer brought the Felisildas' claim within the scope of the arbitration agreement, that is, within the class of claims described by the arbitration agreement as arbitrable. *Id.* at 498 ("[T]he arbitration provision in this case provides for arbitration of *disputes that include third parties* so long as the dispute pertains to the condition of the vehicle." (emphasis added)). Because the Felisildas initially brought their claim against both the dealer and the manufacturer, their dispute was one that "include[d] third parties." *Id.* The Court based its conclusion that equitable estoppel applied primarily on the fact that the Felisildas' claim against the manufacturer fell within the scope of the operative arbitration clause. *Id.*

Here, Glassburg is suing only Ford and not the Dealer. This changes the result and requires a *de novo* exercise in contract interpretation based on the case at hand. The operative arbitration language quoted above states that certain claims between the two signatories—i.e., Glassburg and the Dealer—are arbitrable. The clause referring to "third parties who do not sign this contract" does not operate to bring Glassburg's claim within the agreement's scope. That clause states that a claim between Glassburg and the Dealer is arbitrable so long as it arises out of (among other things) (1) the Contract or (2) a relationship with a nonsignatory that formed as a result of the Contract. As for (1), under *Kramer*, Glassburg's claims against Ford do not arise directly out of the Contract. As for (2), it may fairly be said that Glassburg's relationship with Ford formed as a result of the Contract. But that simply means that claims *between Glassburg and the Dealer* that might somehow relate to that third-party relationship are arbitrable. It does not mean that claims between Glassburg and Ford are arbitrable.

This case is distinguishable from *Felisilda* because the arbitration provision in this case does not provide for arbitration of the dispute between the two parties before the Court. *Felisilda* therefore does not change the result, and equitable estoppel remains inapplicable under *Kramer*.

2. Agency

Next, Ford argues that an agency relationship supports its right to compel arbitration. Specifically, Ford points to the ways in which Glassburg's FAC describes the agency relationship between Ford and the Dealer and urges the Court to compel arbitration based on those allegations. (Mot. Arb. 13.) Under California law, a nonsignatory movant can compel a signatory to arbitration "where there is a connection between the claims alleged against the nonsignatory and its agency relationship with a signatory." *Cohen v. TNP 2008 Participating Notes Program, LLC*, 31 Cal. App. 5th 840, 863–64 (2019). Something more than a mere agency relationship is required, however; the nonsignatory must show that its potential liability arises under the contract establishing the implied warranty (which usually means that liability arose due to the agent performing on the principal's contract in its capacity as agent). *Fuentes v. TMCSF, Inc.*, 26 Cal. App. 5th 541, 551 (2018) (finding no right of nonsignatory to compel arbitration where plaintiff's claims were against nonsignatory in its own capacity, not in its capacity as the signatory's agent).

Here, fatal to Glassburg's agency theory is the observation that, if there is any contract between Ford and the Dealer that establishes an agency relationship between those two, that contract certainly is not the Contract under which Glassburg purchased his Mustang. Glassburg's claims against Ford are not for any liability arising from the Contract—that much was made clear in *Kramer*. Similarly, no party contends that Ford was acting in its capacity as the Dealer's agent when Ford breached the warranties, and indeed, such an argument would be absurd, because it would require a party to assert that a manufacturer manufactures products as an agent of the manufacturer's distributor, when, if anything, the opposite is usually true. Thus, the

purported agency relationship between Ford and the Dealer is insufficient to support Glassburg's nonsignatory theory. *See Pestarino v. Ford Motor Co.*, No. 19-cv-07890-BLF, 2020 WL 3187370, at *3 (N.D. Cal. June 15, 2020) ("Ford does not contend that [the dealer] acted as Ford's agent in signing the Sale Contract. Ford has failed to establish that it may enforce the arbitration provision of the Sale Contract based on an agency relationship between Ford and [the dealer].").

Ford fails to show an applicable nonsignatory theory. Ford is therefore deemed to be a nonparty to the Contract to whom the rights under the Contract, including the right to compel arbitration, are unavailable. Ford may not compel arbitration, and its Motion to Compel Arbitration is accordingly **DENIED**.

**B.     Motion to Dismiss**

Ford seeks dismissal of each of Glassburg's five claims. For the reasons that follow, Glassburg's warranty claims are well-pleaded, and he has standing to sue under California unfair competition law and the Consumer Legal Remedies Act. Finally, the Court dismisses the fraud claim on two independent bases: lack of duty to disclose and the economic loss rule.

As a preliminary matter, Ford seeks dismissal of the proposed nationwide class on the grounds that a nationwide class is not plausible under the facts Glassburg alleges. (Mot. Dismiss 3–9.) But "[c]lass certification is better addressed through a fully-briefed class certification hearing, rather than tacked on to the end"—or, in this case, shoehorned into the beginning—"of an extensive motion to dismiss." *Davenport v. Wendy's Co.*, No. 2:14-cv-00931 JAM DAD, 2014 WL 3735611, at *10 (E.D. Cal. July 25, 2014). The Court finds dismissal of the nationwide class would be premature and defers determination of that issue by **DENYING** that aspect of the Motion to Dismiss. *See id.*; *see also Joseph v. J.M. Smucker Co.*, No. CV 17-8735 FMO (KSx), 2019 WL 1219708, at *4 (C.D. Cal. Mar. 13, 2019).

### 1. Breach of Express Warranty

Glassburg asserts an express warranty claim based on the Ford Extended Service Plan he purchased. (FAC ¶ 38.) The parties agree that, for this claim to survive Ford's motion, Glassburg must allege that Ford: (1) made an affirmation of fact or promise, or provided a description of its goods; and that (2) the promise or description formed part of the basis of the bargain; (3) the express warranty was breached; and (4) the breach caused Glassburg injury. *Keegan v. Am. Honda Motor Co.*, 838 F. Supp. 2d 929, 949 (C.D. Cal. 2012); (Mot. Dismiss 9; Opp'n to Mot. Dismiss ("Opp'n") 5, ECF No. 39).

Ford argues that Glassburg's warranty had certain time period and mileage limitations and that Glassburg has failed to adequately plead the details necessary to ascertain whether the alleged wiring harness defect manifested within these limitations. (Mot. 10–11.) This argument is not well taken because at this stage it is not Glassburg's responsibility to rebut Ford's defenses. As long as nothing in the FAC compels the conclusion that the defect manifested outside the warranty periods (and it does not), then dismissal on this basis is not appropriate.

Ford also argues that Glassburg failed to plead what term of the warranty was breached. This argument also fails. To state a claim, a plaintiff must "describe the exact terms" of the express warranty at issue. *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1142 (N.D. Cal. 2010); *see also Pelayo v. Hyundai Motor Am., Inc.*, No. 8:20-cv-01503-JLS-ADS, 2021 WL 1808628, at *7 (C.D. Cal. May 5, 2021) (dismissing express warranty claim where plaintiffs "failed to identify any specific terms they allege were breached"). However, consistent with foundational contract principles, courts generally do not interpret this rule as requiring parties to set forth the terms of a written contract verbatim. *Cf. In re Out of Network Substance Use Disorder Claims against UnitedHealthcare*, No. SACV 19-2075 JVS (DFMx), 2020 WL 5913855, at *6 (C.D. Cal. July 29, 2020) ("Plaintiffs need not quote the

exact contractual language or attach a copy of every relevant contract[] to survive dismissal." (internal quotation marks omitted)).

Here, Glassburg alleges he bought his Mustang "in May 2018, along with a Ford Extended Service 132 month/125,000 mile extended warranty, from a Ford dealership in Westlake Village, California." (FAC ¶ 8.) Glassburg alleges his "Ford Extended Service Plan expressly covers the cost of parts and labor for repairs to the vehicle's wiring harness and rear view camera." (*Id.*; *see id.* ¶ 38 (same).) This constitutes sufficient pleading of the terms of the warranty because it is sufficient to indicate what the warrantor warranted, by what medium, and how the warrantor failed to follow through on the warranty. To ask for more would be to require Glassburg to quote the exact contractual language, which is not appropriate. *UnitedHealthcare*, 2020 WL 5913855, at *6. Glassburg "allege[s] the specific provisions in the contract creating the obligation the defendant is said to have breached" and thus sufficiently pleads the express warranty's terms. *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 980 (N.D. Cal. 2016); *UnitedHealthcare*, 2020 WL 5913855, at *6.

Finally, Ford argues that Glassburg's express warranty claim fails because he did not give Ford an adequate chance to repair the vehicle. (Mot. 11.) In the typical case, a single presentation of a vehicle does not establish that its manufacturer failed to repair it after a reasonable number of attempts. *See Clark v. Am. Honda Motor Co., Inc.*, --- F. Supp. 3d ---, 2021 WL 1186338, at *5 (C.D. Cal. Mar. 25, 2021) ("Plaintiffs who bought their vehicle for repair only once or not at all cannot maintain a breach of warranty claim."). Here, however, Glassburg alleges that he presented the vehicle for repair at an authorized Ford servicer, and that during that visit, the servicer "declined to repair the vehicle's defective wiring on the basis that it could not identify a problem." (FAC ¶ 9.) Viewing the allegations in the light most favorable to Glassburg, it is plausible in this case that the servicer's refusal to repair was not in fact a proper diagnosis of 'no issue' but was instead an erroneous diagnosis which should have been followed by an in-warranty repair. The possibility of error on the servicer's

part plausibly released Glassburg from the obligation to present the vehicle additional times for repair.

Glassburg's express warranty claim is otherwise well-pleaded and will not be dismissed. The Court **DENIES** Ford's Motion as to the express warranty claim.

*2. Breach of Implied Warranty of Merchantability*

Ford seeks dismissal of Glassburg's second claim for breach of implied warranty of merchantability. To state a claim, "a plaintiff must allege a fundamental defect that renders the product unfit for its ordinary purpose." *T&M Solar & Air Conditioning, Inc. v. Lennox Int'l Inc.*, 83 F. Supp. 3d 855, 878 (N.D. Cal. 2015). Ford argues that Glassburg cannot maintain this claim due because (1) it is not in privity with Glassburg and (2) Glassburg's vehicle was not unfit for its ordinary purpose. Ford is correct on the first of these two arguments, and the Court dismisses the implied warranty claim on this basis alone, without reaching Ford's second argument.

California law requires a plaintiff to allege privity with the defendant to state a claim for breach of implied warranty of merchantability. *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008); *Bhatt v. Mercedes-Benz USA, LLC*, No. CV-16-03171-TJH (RAOx), 2018 WL 5094932, at *2 (C.D. Cal. Apr. 16, 2018). "A buyer and a seller stand in privity if they are in adjoining links of the distribution chain." *Clemens*, 534 F.3d at 1023.

That said, under the third-party beneficiary exception, privity is not required "where a plaintiff sufficiently pleads that he or she is a third-party beneficiary to a contract that gives rise to the implied warranty of merchantability." *Mosqueda v. Am. Honda Motor Co., Inc.*, 443 F. Supp. 3d 1115, 1128 (C.D. Cal. 2020); *cf.* Cal. Civ. Code § 1559 ("A contract, made expressly for the benefit of a third person, may be enforced by [the third person].").

Here, Glassburg's FAC contains a single-paragraph smattering of allegations aimed at establishing privity between himself and Ford. (FAC ¶ 56.) With these

allegations, Glassburg seeks to establish privity directly by arguing that the manufacturer-consumer relationship is sufficient to establish privity, and he alternatively seeks to establish that privity is not required due to the third-party beneficiary exception. In his Opposition, Glassburg fails to oppose Ford's arguments that no privity exists and instead focuses on the third-party beneficiary exception. (Opp'n 11–12.) This failure to oppose constitutes Glassbrg's concession that, but for the third-party beneficiary exception to the privity requirement, the lack of privity would otherwise defeat his claim.

Glassburg argues that he and the class members are third-party beneficiaries "because their car purchases were the directly intended result of [Ford's] contractual relationship with its authorized dealers." *Bhatt*, 2018 WL 5094932, at *3. This Court, however, joins the *Bhatt* court in rejecting Glassburg's argument, as California case law does not support application of the third-party beneficiary doctrine to the type of implied warranty Glassburg asserts. California courts have allowed a third-party beneficiary to enforce a contract where, for example, a property owner hires a prime contractor, the prime contractor hires a subcontractor, and the property owner asserts an implied warranty claim against the subcontractor. *Gilbert Fin. Corp. v. Steelform Contracting Co.*, 82 Cal. App. 3d 65, 69 (1978). But the present situation, involving a consumer, a dealer, and a manufacturer, is fundamentally different. In the construction example, the relationship between the property owner and the prime contractor *preceded* the relationship between the prime contractor and the subcontractor, such that when the prime contractor and subcontractor established their contract that gave rise to the implied warranty, both the prime contractor and the subcontractor knew exactly for whose benefit they were establishing the implied warranty: the property owner. Here, however, the relationship between the consumer and the dealer does *not* precede the relationship between the dealer and the manufacturer; instead, the dealer and the manufacturer first established their relationship, and the consumer later participates by purchasing a car from the dealer.

The result is that, when the dealer and manufacturer established their relationship and the implied warranty arising therefrom, neither knew exactly for whose benefit they might have been establishing that implied warranty. The specific beneficiaries—consumers like Glassburg—would not be known to either the manufacturer or the dealer until later.

Importantly, in the vehicle sale context, it is the dealer who exerts primary control over which consumers purchase a vehicle; practically speaking, the manufacturer has no say in the matter. Thus, if Glassburg's third-party beneficiary argument is to be accepted, then Ford has contractual obligations to a class of third-party beneficiary consumers whose size and composition is entirely outside Ford's control. No California case law suggests an implied warranty relationship can exist between a manufacturer and such a nebulous, intractable class of third-party beneficiary consumers. The Court is unwilling to extend the third-party beneficiary exception to implied warranty law in a way that would create this result. *See Clemens,* 534 F.3d at 1024 ("California courts have painstakingly established the scope of the privity requirement . . . and a federal court sitting in diversity is not free to create new exceptions to it.").[2]

The Court **GRANTS** Ford's Motion as to the implied warranty claim. In so doing, the Court notes Glassburg already asserted a variety of allegations directed toward privity. (FAC ¶ 56.) By addressing only the third-party beneficiary exception in his Opposition brief, Glassburg concedes that his other privity allegations are insufficient, and he does not offer any proposal for curing the deficiency. More broadly, the third-party beneficiary exception does not apply to the facts of this case; this legal conclusion is based on the case's foundational fact pattern and appears unlikely to change with additional pleading. Accordingly, any further amendment

---

[2] There is a split of authority on this conclusion, even within this District. *Compare Mosqueda*, 443 F. Supp. 3d at 1128 (accepting third-party beneficiary exception to requirement of privity between consumer and car manufacturer) *with Bhatt*, 2018 WL 5094932, at *3 (rejecting third-party beneficiary exception to requirement of privity between consumer and car manufacturer).

would be futile, and the implied warranty claim is **DISMISSED WITHOUT LEAVE TO AMEND**.

### 3. UCL and CLRA

Ford seeks dismissal of Glassburg's third and fourth claims for violations of the California Consumer Legal Remedies Act ("CLRA") and California unfair competition law ("UCL"). First, Ford argues that the UCL and CLRA claims are based on fraud and that they fail for the same reasons Glassburg's fraud claim fails. However, both the UCL and the CLRA cover conduct that is not merely fraudulent. Cal. Bus. & Prof. Code § 17200 (prohibiting unlawful competition, defined as "any unlawful, unfair or fraudulent business act or practice"); *Bower v. AT&T Mobility, LLC*, 196 Cal. App. 4th 1545, 1556 (2011) ("The CLRA declares unlawful a variety of 'unfair methods of competition and unfair or deceptive acts or practices' used in the sale or lease of goods or services to a consumer."). Therefore, to convince the Court to dismiss Glassburg's UCL and CLRA claims, Ford must demonstrate some other basis for dismissal of these claims.

Ford argues that the UCL and CLRA claims must be dismissed pursuant to *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020), because they are equitable claims for which Glassburg already has an adequate remedy at law. (Mot. Dismiss 21–23.) In *Sonner*, the Ninth Circuit reaffirmed the principle that plaintiffs seeking equitable remedies must first show the court that no adequate remedy exists at law. 971 F.3d at 844. Here, however, with his UCL and CLRA claims, Glassburg seeks a prospective injunction "ordering Defendant to extend repair and replacement remedies to all Class members in California." (FAC ¶ 67; *see also* FAC ¶ 77.) This injunctive relief is not an available remedy at law; moreover, its presence in the FAC distinguishes this case from *Sonner*. 971 F.3d at 842 ("Injunctive relief is not at issue."). Accordingly, Glassburg has sufficiently pleaded an inadequate remedy at law. *See Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652, 687 (N.D. Cal. 2021)

("[M]onetary damages for past harm are an inadequate remedy for the future harm [at which] an injunction under California consumer protection law is aimed.").

Ford presents no other basis for dismissal of the UCL and CLRA claims. Accordingly, the Court **DENIES** Ford's Motion as to the UCL and CLRA claims.

### 4. Fraud

Ford seeks dismissal of Glassburg's fifth claim for fraudulent concealment or omission. The elements of fraud that give rise to a tort action for deceit are "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e. to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 974 (1997). Glassburg's theory is that Ford intentionally concealed or failed to disclose the wiring harness defect and that he would not have purchased the Mustang had he known about this defect.

Glassburg's fraud claim fails for at least two separate reasons: the lack of a duty to disclose and the economic loss rule. Either of these reasons provides a sufficient independent basis to dismiss the fraud claim without leave to amend.

### a. Duty to Disclose

When, as here, a claim for fraud is based on an omission, one of the following four scenarios must apply to establish the defendant's duty to disclose information to the plaintiff: (1) the defendant is the plaintiff's fiduciary; (2) the defendant has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff; (3) the defendant actively conceals a material fact from the plaintiff; or (4) the defendant makes partial representations that are misleading because some other material fact has not been disclosed. *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997). Lemon law plaintiffs usually establish a manufacturer's duty to disclose by way of the second or the fourth scenario or some combination of the two; the third scenario may also be present in some degree.

In *Hoffman v. 162 N. Wolfe LLC*, 228 Cal. App. 4th 1178 (2014), the California Court of Appeal explained that the second and third ways of establishing a duty to disclose "presuppose[] the existence of some other relationship between the plaintiff and defendant in which a duty to disclose can arise." *Id.* at 1187. In other words, there must be a relationship between the parties, such as a contractual or other economic or legal relationship, that creates the need for the defendant to disclose its exclusive knowledge to the plaintiff. For example, a retail consumer can sue the retail seller of a product for fraud if that seller conceals material information about the product in connection with the sale because the direct sales transaction between the consumer and the seller constitutes the "some other relationship" described by the California Court of Appeal in *Hoffman*. Here, no such special relationship exists, and as a result, the second and third *LiMandri* scenarios do not apply.

Glassburg's allegations of the representations Ford made regarding the Mustang are likewise insufficient to indicate a set of partial misleading representations (*LiMandri* scenario four). The only case-specific allegation of a representation Ford might have made to Glassburg is by way of the Monroney label[3] on the Mustang that listed "REAR VIEW CAMERA" and "AM/FM CD/MP3 SAT CAPABL" as features of the vehicle. (FAC ¶ 8.) Even generously assuming that the Monroney label was proffered by Ford, this list of features does not amount to a partial representation about the quality or characteristics of the wiring harness. The only other allegations of Ford's partial representations and active concealment are conclusory and therefore not well-pleaded. (*See, e.g.*, FAC ¶ 82.)

California law also recognizes an exception to the special relationship requirement (or, perhaps, establishes that the special relationship requirement is met) when the alleged defect creates a safety risk of which the manufacturer was aware. *Gray v. Toyota Motor Sales, U.S.A.*, No. CV 08-1690 PSG (JCx), 2012 WL 313703,

---

[3] A Monroney label is a window sticker that displays certain mandatory information about the vehicle for sale. *Yung Kim v. Gen. Motors, LLC*, No. CV 11-06459 GAF (MRWx), 2012 WL 13069995, at *5 (C.D. Cal. Mar. 9, 2012).

at *5 (C.D. Cal. Jan. 23, 2012); *See Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1095–96 (framing this inquiry in terms of the second *LiMandri* scenario). The safety-related defect at issue here affects Glassburg's backup camera, which he alleges has failed once in his vehicle and which he alleges fails intermittently in similar vehicles. (FAC ¶¶ 9, 13–14.)

Ultimately, the Court must determine whether a defect that causes a backup camera to malfunction once for an unspecified amount of time constitutes a safety-related defect that establishes a duty on the manufacturer's part to inform consumers and remedy the defect. On one hand, defects that do not relate to safety, such as defects related only to the vehicle's mileage per gallon, do not qualify. *Gray*, 2012 WL 313073, at *7. On the other hand, defects that create material safety risks, such as a faulty speedometer that "easily would lead to traveling at unsafe speeds," do qualify. *Falk*, 496 F. Supp. 2d at 1096.

A careful reading of the well-pleaded factual allegations regarding Glassburg's backup camera and the *Iqbal*/*Twombly* plausibility standard reveals that the defect in Glassburg's vehicle is closer to the non-qualifying defect in *Gray* than the qualifying defect in *Falk*. It is, simply put, implausible that a backup camera's single malfunction of unspecified length evidences a safety-related defect Ford was required to disclose or cure. While the backup camera may be a safety feature of the Mustang, its intermittent, momentary malfunction does not constitute a material safety risk in the fraud context. *Gray*, 2012 WL 313703, at *5 (noting that a defect affecting the gas mileage of a vehicle was indisputably not a safety-related defect). Even when a backup camera malfunctions, a driver is still able to operate the mechanical components of the vehicle safely. *See Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 836–37 (2006) (finding no relation to safety in defect that caused front balancer shaft oil seal to dislodge). Indeed, courts have repeatedly found that particular mechanical malfunctions that do not result in the vehicle being generally and pervasively dangerous to drive are <u>not</u> safety-related defects. *See, e.g.,*

*Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255, 1261–62, 1270 (2006) (finding no relation to safety in defect that caused tubular steel exhaust manifolds to prematurely crack and fail). To hold otherwise in this context would be to hold car manufacturers responsible for proactively disclosing to potential buyers a large class of potential vehicle issues in a way that is unsupported by California case law. The Court therefore finds no duty on the part of Ford as a matter of law.

  b. *Economic Loss Rule*

   Dismissal of Glassburg's fraud claim is also appropriate on the basis of the economic loss rule. This rule provides that, where purchasers' expectations in a sale are frustrated because the product they bought is not working properly, their remedy is said to be in contract alone, for they have suffered only economic losses. *Robinson Helicopter, Inc. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004). The economic loss rule requires a purchaser to recover in contract for purely economic loss due to disappointed expectations unless the purchaser can demonstrate harm above and beyond that caused by a contractual promise. *Id.*

   Ford contends the economic loss rule bars Glassburg's cause of action for fraud. (Mot. Dismiss 18–19.) Ford is correct; Glassburg fails to allege that Ford's fraudulent concealment exposed him to liability for personal damages independent of his economic loss. *See Robinson Helicopter*, 34 Cal. 4th at 991; *NuCal Foods, Inc. v. Quality Egg LLC*, 918 F. Supp. 2d 1023, 1032 (E.D. Cal. 2013).

   Glassburg forcefully asserts that a faulty backup camera is a "critical safety feature in automobiles" that exposes him to liability beyond mere diminution in the value of the vehicle. (FAC ¶ 14.) However, mere speculation about the heightened risk of accidents is not the same kind of exposure to liability the court in *Robinson Helicopter* was describing as sufficient to remove a case from the economic loss rule's ambit. In *Robinson Helicopter*, the defendant had repeatedly misrepresented the state of certain faulty clutches that it had sold to the plaintiff, a helicopter manufacturer. The helicopter manufacturer used the faulty clutches in manufacturing its helicopters,

1  which it sold to customers. Some of those customers informed the helicopter
2  manufacturer that the clutches had actually cracked. 34 Cal. 4th at 986. The
3  California Supreme Court noted that the helicopter manufacturer was harmed not only
4  from the potential for liability due to helicopter crashes, but also due to
5  (1) disciplinary action by the Federal Aviation Administration, (2) the cost of
6  investigating the cause of the faulty clutches, and (3) the cost of sending its employees
7  to replace the faulty clutches in helicopters that had already been sold to customers,
8  which in that case cost over $1.5 million. *Id.* at 987, 991. Thus, although the
9  California Supreme Court described some of the manufacturer's liability as
10 'potential,' there was actual, concrete liability on which the claim was based.

11 The exposure to third-party liability Glassburg alleges in this matter is of an
12 entirely different character. Glassburg's allegations of third-party liability are
13 speculative and are based off descriptions of potential dangers associated with a faulty
14 backup camera. Given that Glassburg alleges his backup camera malfunctioned only
15 once and for an unspecified period of time, Glassburg's allegation of a safety defect
16 establishing harm beyond economic loss is particularly weak. (SAC ¶ 9.)

17 Finally, Glassburg argues for application of the fraud exception to the economic
18 loss rule, under which a defendant's fraudulent inducement of a contract gives rise to
19 tort liability independent from contract and not barred by the economic loss rule.
20 *Arechiga v. Ford Motor Co.*, No. SACV 17-01915 AG (DFMx), 2018 WL 5904283,
21 at *4 (C.D. Cal. Apr. 23, 2018). Glassburg argues that this rule applies because Ford
22 fraudulently induced the sale by failing to disclose the wiring harness defect, which,
23 as alleged, was a material fact within its exclusive knowledge. (Opp'n 15; FAC
24 ¶¶ 82–84.) In this case, however, Ford never committed fraudulent inducement
25 because, as discussed, Ford never had a duty to disclose information about the wiring
26 harness to Glassburg. The economic loss rule remains applicable and bars
27 Glassburg's fraud claim as a matter of law.

28

For these reasons, the Court **GRANTS** Ford's Motion as to the fraudulent inducement claim and **DISMISSES** this claim **WITHOUT LEAVE TO AMEND**.

## IV. CONCLUSION

For the reasons discussed above, the Court **DENIES** Ford's Motion to Compel Arbitration (ECF No. 35) and **GRANTS IN PART AND DENIES IN PART** Ford's Motion to Dismiss (ECF No. 33). The Court **DISMISSES** the implied warranty of merchantability and fraudulent omission claims **WITHOUT LEAVE TO AMEND**. The Motion to Dismiss is otherwise denied.

Ford shall file its Answer within **twenty-one (21)** days.

**IT IS SO ORDERED.**

November 2, 2021

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**